#### b. *Discrimination in Terms and Conditions of Employment*

 Foster's complaint also asserts a claim for "unlawful interference with her right to equally benefit from her employment." Section § 1981(b) provides that "[f]or purposes of [§ 1981], the term 'make and enforce contracts' includes ... the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." To defeat a motion for summary judgment as to her claim that BJC discriminated against her in the conditions of employment, Foster must present evidence sufficient to permit an inference that she received less favorable treatment than similarly situated white employees. *See Barge v. Anheuser–Busch, Inc.,* 87 F.3d 256, 259 (8th Cir.1996).

Foster's 1997 performance evaluation resulted in her receiving a lower salary than Torrence following the evaluation. BJC argues that its use of a "merit system" in determining Foster's pay precludes an inference of discrimination. I disagree. An employer that adopts a merit system may not apply it in a discriminatory manner. *See Hutchins v. International Bhd. of Teamsters,* 177 F.3d 1076, 1082 (8th Cir.1999) (upholding summary judgment after finding no evidence that defendant applied its merit system in a discriminatory manner). I have already concluded that a factual issue exists as to whether Foster and Torrence were similarly situated. For the reasons previously stated, I conclude that Foster has shown the existence of a genuine issue of material fact as to whether she was paid less than a similarly situated white employee. I therefore find it unnecessary to consider whether Foster's claim of discrimination in the conditions of employment could be sustained on additional theories, such as discrimination in the allocation of overtime.

### III. *Conclusion*

In conclusion, genuine issues of material fact preclude summary judgment as to Foster's § 1981 claims. I will grant summary judgment as to Foster's MHRA claims, however, because I conclude that they are time-barred.

Accordingly,

**IT IS HEREBY ORDERED** that BJC's motion for summary judgment [# 28] is granted as to count II and denied in all other respects.

**IT IS FURTHER ORDERED** that BJC's supplemental motion for summary judgment [# 31] is denied.

Suzanne **DECK**, Plaintiff,

v.

**AMERICAN HAWAII CRUISES, INC.,**
a Delaware Corporation,
**Defendants.**

**Civ.No. 98–0002 ACK.**

United States District Court,
D. Hawai'i.

March 30, 2000.

Michael K. Livingston, Davis & Levin, Honolulu, HI, for plaintiff.

John R. Lacy, Normand R. Lezy, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for defendant.

## ORDER GRANTING DEFENDANTS MOTION FOR PARTIAL SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND

This action arises out of a seven-day interisland cruise taken by Plaintiff Suzanne Deck ("Plaintiff") aboard Defendant American Hawaii Cruises' cruise ship S.S. Independence, from February 15, 1997 to February 22, 1997. Plaintiff was dissatisfied with her cruise, and as a result filed the instant lawsuit against Defendant. In her complaint, Plaintiff alleges causes of action for violations of the Americans with Disabilities Act ("ADA"), Hawaii's disability statute, false advertising, and unfair/deceptive trade practices.

After hearing oral argument, this Court previously denied Defendant's Motion for Summary Judgment, filed on August 25, 1998, and granted in part Plaintiff's cross-motion for partial summary judgment, filed on November 5, 1998. *See* Order issued Jan. 15, 1999. This Court determined that to the extent Plaintiff's claims fall within subpart D of the ADA regarding new construction and alterations of facilities, these claims were not covered by the ADA. However, to the extent that Plaintiff raised other ADA claims, the Court held that these claims were applicable to cruise ships and were properly brought before the Court.

Plaintiff subsequently filed the instant Motion for Summary Judgment on January 6, 2000, supported by a Separate Concise Statement of Facts, seeking a determination of liability as to Plaintiff's ADA claim. Defendant filed a Memorandum in Opposition on March 2, 2000, supported by a Separate Concise Statement of Material Facts, claiming that genuine issues of material fact exists that preclude summary judgment. Plaintiff filed a Reply on March 13, 2000.

On March 2, 2000, Defendant filed a Counter Motion to Dismiss or in the Alternative for Summary Judgment on Plaintiff's Claims Under the ADA, arguing that Plaintiff's ADA claims should be dismissed because Plaintiff has failed to allege the requisite colorable threat of imminent harm. Plaintiff filed an Opposition on March 10, 2000.[1] Defendant filed a Reply on March 14, 2000,[2] and filed a Supplemental Memorandum and Concise Statement of Facts on March 20, 2000.[3] The Court heard oral argument on March 20, 2000.

On March 21, 2000, Plaintiff submitted an Ex Parte Motion for Leave to File Declaration of Suzanne Deck in Further Support of Plaintiff's Memorandum in Opposition to Defendant's Counter Motion to Dismiss or in the Alternative for Summary Judgment.[4]

---

1. Plaintiff, without leave of court, faxed to this Court on March 16 and 17, 2000, two decisions he subsequently discovered.

2. Defendant requested leave of court to supplement its reply with Plaintiff's deposition testimony as soon as the deposition transcript is available to Defendant.

3. Defendant filed such a supplemental memorandum in response to Plaintiff's faxes of March 16 and 17, 2000.

4. The Court notes that it did not grant Plaintiff leave to file such a supplemental declaration. Plaintiff's declaration is "patently a belated effort to bolster her standing to assert injunctive relief." *Delil v. El Torito Restaurants, Inc.*, 1997 WL 714866, at *1 (N.D.Cal. June 24, 1997) (unpublished). The Court will not consider Plaintiff's attempt to create a new factual record and will decide the motion before it based on the factual record as it existed as of March 20, 2000. *See id.* (refusing to consider facts surrounding plaintiff's visit to defendant restaurant after court granted leave to file supplemental brief on standing; finding no standing because plaintiff showed no real and imminent threat of future injury). Moreover, Plaintiff must have standing at the time she filed her complaint. *See Friends of the Earth v. Laidlaw Env. Servs.*, 528 U.S. 167, 120 S.Ct. 693, 700, 145 L.Ed.2d 610 (2000) (finding citizen lacked standing to sue under Clean Water Act for violations that had ceased when complaint was filed); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 45, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."); *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d

## STANDARD

### I MOTION TO DISMISS

■ Under Rule 12(b)(6), in determining whether a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Wileman Bros. & Elliott, Inc. v. Giannini*, 909 F.2d 332, 334 (9th Cir.1990); *Shah v. County of Los Angeles*, 797 F.2d 743, 745 (9th Cir. 1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Balistreri*, 901 F.2d at 699; *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that

might be proved in support of plaintiffs' claims. *Id.*

■ A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the Complaint, such as lack of jurisdiction or the statute of limitations. 2A J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice*, ¶ 12.07 at 12–68 to 12–69 (2d ed.1991 & supp. 1191–92) (citing *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (emphasis added)).

### II SUMMARY JUDGMENT

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal. v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See id.* at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demon-

---

893 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."); *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (Quoting Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). The fact that Plaintiff's proffered declaration contradicts her deposition testimony provides fur-

ther grounds for the Court's disregard. *See Messick v. Horizon Indus. Inc.*, 62 F.3d 1227, 1231 (9th Cir.1995) (recognizing that a party cannot create his own issue of fact by introducing an affidavit contradicting his prior deposition testimony, but noting that a party is not precluded from "elaborating upon, explaining or clarifying prior testimony"); *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262 (9th Cir.1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

strate the absence of any genuine issue of material fact [citations omitted], the non-moving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Electrical Serv.,* 809 F.2d at 630–31.

### DISCUSSION

### I DEFENDANT'S COUNTER MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT ON PLAINTIFF'S ADA CLAIM

Since Defendant's counter-motion deals with a fundamental aspect of this case, the Court will address this motion first. Defendant seeks dismissal of or in the alternative summary judgment on Plaintiff's ADA claim (Count I of Plaintiff's Complaint). Defendant argues that Plaintiff has no standing to sue for injunctive relief under the ADA.

■ Plaintiff has the burden of establishing that she has standing to raise the claims asserted. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). For purposes of a motion to dismiss, in considering a challenge to standing, a court takes as true all material allegations of the complaint and construes the complaint in favor of the plaintiff. *See Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To withstand summary judgment, a plaintiff "must set forth by affidavit or other evidence specific facts ... which for purpose of the summary judgment motion will be taken to be true" to demonstrate standing. *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130 (internal quotations omitted). These facts "must affirmatively appear in the record." *Spencer v. Kemna,* 523 U.S. 1, 10–11, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).

■ The Supreme Court has developed a three-part test to determine whether a plaintiff has standing to bring a claim. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130.

The first prong of this test is the "injury in fact" requirement: "[T]he plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent', not 'conjectural' or 'hypothetical.'" *See id.* Second, there must be a causal connection between the injury and the conduct complained of. *See id.* Finally, a plaintiff must show that it is likely that the injury will be redressed by a favorable decision. *See id.* "These elements are the 'irreducible minimum' required by the Constitution." *Northeastern Fla. Chapter of the Associated Gen. Contractors v. Jacksonville,* 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (quotinq *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700(1982)).

 Although a single act of past discrimination is sufficient to endow standing to bring an action under the ADA, a plaintiff must still have standing to make a claim for injunctive relief.[5] In order to establish an injury in fact necessary to a claim for injunctive relief, the moving party must demonstrate that a defendant's conduct is causing irreparable harm. *See Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Levin v. Harleston,* 966 F.2d 85, 90 (2d Cir.1992). This requirement cannot be met absent a showing of a real or immediate threat that the plaintiff will be wronged again; that is, a Plaintiff does not have standing to sue for such injunctive relief by merely alleging that Defendant has a policy and practice of discriminating against disabled persons generally. *See Lyons,* 461 U.S. at 101, 103 S.Ct. 1660. While past wrongs may be evidence bearing on whether there is a real and immediate threat of repeated injury, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by a continuing, present adverse effects." *O'Shea v. Littleton,* 414

U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Thus, although a plaintiff need not repeatedly suffer discrimination in order to assert her rights under Title III, ADA plaintiffs who seek injunctive relief must demonstrate that they themselves face a real and immediate threat of future harm; there must be sufficient immediacy, reality and causality between defendant's conduct and plaintiffs' allegations of future injury to warrant injunctive relief.

In *Lujan,* the Supreme Court denied standing to environmental groups to challenge a rule that limited section 7 of the Endangered Species Act of 1973 to actions within the United States or on the high seas, because the plaintiffs failed to demonstrate an injury in fact. *Lujan,* 504 U.S. at 557–59, 112 S.Ct. 2130. The environmental groups attempted to demonstrate standing by submitting two affidavits. The first affiant stated that she had traveled to Egypt to observe the native habitat of the endangered Nile crocodile and intended to return. The second affiant stated that she had traveled to Sri Lanka to observé the habitat of endangered species and intended to return, yet had no current plans to return. *See id.* at 563–64, 112 S.Ct. 2130. The Supreme Court found these affidavits inadequate to establish standing, as an intent to return to places was insufficient to support a finding of actual or imminent injury. *See id.* "Such 'some day' intentions—without any description of concrete plans, or indeed even any speculation of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *See id.*

The Supreme Court denied standing on a similar basis in *Lyons.* In that case, the plaintiff alleged a single incident during which a police officer placed the plaintiff in a choke hold without provocation. The Supreme Court denied standing for injunctive relief, requiring a more extensive

---

**5.** Injunctive relief is the only remedy to which a private plaintiff is entitled in a suit brought pursuant to Title III of the ADA. *See* 42 U.S.C. § 12188(a)(1); 28 C.F.R. § 36.501; 28 C.F.R. § 36.504.

showing of real and immediate threat of future harm:

> That Lyons may have been illegally choked by the police on October 6, 1976, ... does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

*Lyons,* 461 U.S. at 105, 103 S.Ct. 1660; *see also O'Shea v. Littleton,* 414 U.S. 488, 495–496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.").

A number of district court cases have followed suit, denying standing for claims of injunctive relief under the ADA where a plaintiff fails to show a real or immediate threat of injury. *See, e.g., Bravin v. Mount Sinai Med. Ctr.,* 186 F.R.D. 293 (S.D.N.Y.1999), *vacated in part on other grounds,* 58 F.Supp.2d 269 (S.D.N.Y.1999) (denying standing where plaintiffs failed to show that there was a likelihood that they would require the services of defendant hospital in the future); *Martin v. Hyatt Corp.,* Civ. No. 97–209 (D.Haw. Feb. 26, 1999) (unpublished) (finding no actual or imminent injury where plaintiff had no plans to return to defendant's hotel); *Proctor v. Prince George's Hosp. Ctr.,* 32 F.Supp.2d 830 (D.Md.1998) (finding no standing for deaf plaintiff who was denied sign language interpreter services in a hospital because any assertion plaintiff would return to hospital based on mere speculation); *Delil v. El Torito Restaurants, Inc.,* 1997 WL 714866 (N.D.Cal. 1997) (unpublished) (granting summary judgment for lack of standing where plaintiff did not demonstrate continuing, present adverse effects because she alleged only a single incident of discrimination in a restaurant more than one hundred miles away from where she lived and worked and did not allege that she intended to return to the restaurant, despite that she

had since returned once); *Naiman v. New York Univ.,* 1997 WL 249970 (S.D.N.Y. 1997) (denying standing where Plaintiff alleged four visits to defendant hospital where defendant failed to provide him with effective sign language communication, as plaintiff did not show a real or immediate threat that he will require the services of defendant in the future); *O'Brien v. Werner Bus Lines,* 1996 WL 82484 (E.D.Pa. Feb.27, 1996) (finding no standing where plaintiffs failed to show "that they are likely to use Werner buses in the near future or, if they do use them, that Werner is likely to violate their rights under the ADA again"); *Hoepfl v. Barlow,* 906 F.Supp. 317 (E.D.Va.1995) (denying standing where defendant had refused to perform surgery on plaintiff because she was HIV positive and plaintiff had since moved to another state and had the surgery performed by another physician); *Schroedel v. New York Univ. Med. Ctr.,* 885 F.Supp. 594 (S.D.N.Y.1995) (finding no standing where plaintiff "failed to allege anything more than conjecture that the conduct complained of will injure her in the future," as plaintiff did not allege that she regularly uses the services of defendant hospital, and was only a patient on one prior occasion); *Aikins v. St. Helena Hospital,* 843 F.Supp. 1329, 1334 (N.D.Cal. 1994) (denying standing to a deaf plaintiff, where plaintiff had been denied sign language interpreter services at the hospital that was treating her husband, as plaintiff did not show "that defendants' alleged discrimination is ongoing and that she is likely to be served in the near future"); *Atakpa v. Perimeter OB–GYN Associates, P.C.,* 912 F.Supp. 1566, 1574 (N.D.Ga.1994) (finding no standing to sue the defendant ob-gyn clinic, even though plaintiff was still in childbearing years, because she "has not alleged that she will ever seek services from defendants in the future").

■ The facts in this case are similar to those cases cited above wherein the court denied standing. In the instant case, Plaintiff's Complaint does not allege that

she has any plans to use Defendant's services in the future, nor does she allege in her affidavit or deposition anything more than a conditional, speculative interest in doing so. As such, Plaintiff fails to establish the "real and immediate threat" of future injury at the hands of defendants that *Lyons* requires.

To avoid summary judgment, a plaintiff must demonstrate standing "by specific evidentiary facts and not by mere allegations." *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir.1997). "It is a long-settled principle that standing alone cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

Plaintiff argues that she has standing because she would like to take a cruise on Defendant's ship in the future. In her declaration, Plaintiff states that although she is unable to commit to a particular date now, because of her mother's health situation, she "will settle that situation in the near future and will then *look into taking such trips as another cruise on the S.S. Independence.*" Deck Decl. dated March 6, 2000 (emphasis added).[6]

Such speculative and conditional intention is insufficient to sustain standing. *See Northwest Airlines, Inc. v. Federal Aviation Admin.*, 795 F.2d 195, 201 (D.C.Cir. 1986) (stating that "[t]he injury requirement will not be satisfied simply because a chain of events can be hypothesized in which the action challenged eventually leads to actual injury"). First, Plaintiff's interest is too conjectural, as it is conditional on her mother's health situation. Second, Plaintiff states that a cruise on the S.S. Independence is only *one* alternative she will "look into"; when the occasion arises, Plaintiff may chose to "look into" taking a cruise on a different ship, rather

than on Defendant's S.S. Independence. Plaintiff also called her Hawaii cruise a "trip of a lifetime." Deck Depo. 55:20–25. Moreover, Plaintiff indicated financial difficulties that may prevent her from taking a trip in the near future. *See id.* at 232:1–17. Plaintiff's plans as such are analogous to the *Lujan* affiants' statements that they would like to visit endangered species abroad but had no concrete plans; Plaintiff simply has not demonstrated that her threat of future harm is more than merely conjectural and hypothetical. Accordingly, Plaintiff has failed to establish standing.

Plaintiff argues that a number of cases support her standing in this case. Plaintiff's reliance on these cases, however, is misplaced, as the cases are distinguishable from the one at bar. Plaintiff's cases either fail to address the injury-in-fact element required for injunctive relief, or involve plaintiffs whose future injury was more than merely conditional or speculative, as in the instant case. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Env. Servs.*, 528 U.S. 167, 120 S.Ct. 693, 706, 145 L.Ed.2d 610 (2000) (finding association had standing to challenge violation of Clean Water Act where it was probable that defendant's "continuous and pervasive illegal discharges of pollutants into a river would cause nearby residents to curtail their recreational use of that waterway and would subject them to other economic and aesthetic harms"); *Clinton v. New York*, 524 U.S. 417, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998) (finding standing to challenge constitutionality of Line Item Veto Act, where plaintiffs would suffer an immediate and ongoing injury as soon as the laws at issue were canceled by the President); *Duffy v. Riveland*, 98 F.3d 447 (9th Cir.1996) (finding standing for claim for declarative relief under ADA where plaintiff was the object of governmental

---

6. The Court notes that the first two pages of Plaintiff's Declaration are original copies, whereas the signature page of Plaintiff's Declaration is a faxed version. The Court hesitates to rely upon a version of a document that Plaintiff obviously did not sign. The Court is comforted, however, by the likelihood that Plaintiff's counsel used the unfaxed versions of pages one and two because they are more legible than their faxed counterparts.

action); *Northeastern Florida Chapter of the Assoc. General Contractors of Amer. v. Jacksonville,* 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (finding standing to challenge constitutionality of ordinance under equal protection clause, noting that "[t]o establish standing ... a party challenging a set-aside program ... need only demonstrate that it is *able* and *ready* to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis"); *Johanson v. Huizenga Holdings, Inc.,* 963 F.Supp. 1175 (S.D.Fla.1997) (finding standing to challenge development of planned hockey arena for "Panthers" where plaintiffs were Panthers fans and occasional purchasers of Panthers tickets); *Independent Living Resources v. Oregon Arena Corp.,* 982 F.Supp. 698, 707 (D.Or.1997) (conducting no *Lujan* injury-in-fact analysis, but only noting in action challenging the "Rose Garden" arena's compliance with the ADA, the Court's satisfaction that plaintiffs wished to return to the Rose Garden); *Colorado Cross Disability Coal. v. Hermanson Fam. Ltd. Partnership,* 1997 WL 1523960, Civ. No. 96–WY–2490–AJ (D.Colo. Aug. 12, 1997) (finding plaintiff, who had "been to Larimer Square many times in the past and intends to go there in the future," including to do Christmas shopping, had standing to bring claim, despite that he did not have specific plans to shop there at any specific date); *Greater Los Angeles Council on Deafness, Inc. v. Baldrige,* 827 F.2d 1353 (9th Cir.1987) (finding standing for purposes of Article III under Rehabilitation Act, where imminent injury existed for deaf plaintiffs who couldn't "enjoy the benefits of television programs broadcast by public television stations"). Moreover, Plaintiff mis-cites the holding in one case, which actually supports dismissal for lack of standing. *See Naiman v. New York University,* 1997 WL 249970 (S.D.N.Y.

May 13, 1997) (unpublished) (finding that plaintiff *did not* demonstrate standing to seek injunctive relief, despite that plaintiff visited defendant hospital four times where defendant failed to provide ADA compliant services).

Plaintiff argues in particular that the Supreme Court's decision in *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), supports Plaintiff's standing. Plaintiff is mistaken, however, in that the Supreme Court did not even address standing in that case. Plaintiff's argument that "there was no showing that the plaintiff intended to return to this particular dentist for future treatment," is misleading. Plaintiff neglects to note that the Court—nor any of the lower courts, for that matter—simply does not address whether the plaintiff intended to return to the dentist; the Court simply states that the defendant dentist "offered to perform the work at a hospital ... [and plaintiff] declined." *Id.* at 629, 118 S.Ct. 2196. Whether the plaintiff declined the dentist's services altogether remains unknown; it is entirely possible that Plaintiff explicitly stated that she wanted the very same cavity filled in the defendant's office that the defendant had refused to fill—and the Supreme Court did not mention this fact because standing obviously was not an issue.[7]

The Court also notes that the "futile gesture" doctrine[8] of the ADA that Plaintiff relies upon does not support standing in this case. Although a plaintiff need not repeatedly suffer discrimination in order to assert her rights under Title III, it is clearly established that ADA plaintiffs who seek injunctive relief must still demonstrate that they themselves face a real and immediate threat of future harm. *See Schroedel,* 885 F.Supp. at 599, n. 2 (addressing plaintiff's argument for standing

---

7. The Court also notes that the federal government and the Maine Human Rights Commission intervened as plaintiffs in that case.

8. 42 U.S.C. § 12188(a)(1) provides: "Nothing in this section shall require a person with a

disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions."

based on futile gesture doctrine, noting that plaintiff's claims "do not qualify for injunctive relief under this section, . . . as she is not currently 'being subjected to discrimination' "). Plaintiff has failed to meet this burden.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss or in the Alternative for Summary Judgment on Plaintiff's Claims under the American with Disabilities Act.

## II *PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

Plaintiff seeks partial summary judgment on the issue of liability as to Plaintiff's ADA claim. Because the Court has determined that dismissal is appropriate as to Plaintiff's ADA claim for injunctive relief, the Court DENIES Plaintiff's Motion for Partial Summary Judgment as to this claim.

### *CONCLUSION*

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Counter–Motion to Dismiss or in the Alternative for Summary Judgment on Plaintiff's Claims under the Americans with Disabilities Act. Plaintiff's ADA Claim is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.